CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
February 13, 2025
LAURA A. AUSTIN, CLERK
BY: s/A. Beeson
        DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| **DAVON BRASHIR MARTIN,** ) | |
| Plaintiff, ) | Civil Action No. 7:22cv00567 |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | |
| **LT. HAMILTON, et al.,** ) | By: Robert S. Ballou |
| Defendants. ) | United States District Judge |

Davon Brashir Martin, a federal inmate currently incarcerated at USP Florence, has filed this lawsuit under *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), against several Federal Bureau of Prisons employees at U.S.P. Lee in Lee County, Virginia. The defendants have filed a Motion to Dismiss or in the alternative, a Motion for Summary Judgment, to which the plaintiff has responded. Plaintiff has also filed a Motion to Amend his complaint. Upon consideration of the pleadings and the law, I must deny the Motion to Amend and grant the Motion to Dismiss.

## I. FACTUAL BACKGROUND

In considering a Motion to Dismiss, the court must accept as true all well-pleaded facts in the complaint and draw all reasonable inferences in the plaintiff's favor. *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). In the light most favorable to the plaintiff, this suit is based upon the following events as set forth in his Amended Complaint. Dkt. No. 20.

On November 17, 2021, a 3:57 p.m., plaintiff's cellmate pushed the "duress" button, signaling that plaintiff was suffering from a seizure, laying on his back and unresponsive. One of the defendants, correctional officer Rondal White, was the first to respond, along with other officers and medical staff. The officers rolled plaintiff on his stomach and his arms and legs

were cuffed. Plaintiff alleges that the cuffs were "wantonly tight" causing flesh wounds to his wrists and ankles. Plaintiff also alleges that this caused damages to his front teeth and molars.

Plaintiff was placed on a stretcher and transported to the medical unit in USP Florence. He woke up at 4:46 p.m. and he was still handcuffed. Plaintiff asked RN Spencer Bowman "to please give me medical attention" because he was in severe pain. Bowman responded that plaintiff was "high" off something and did not need medical attention. Plaintiff alleges that through this exchange denying him needed care and treatment officers and staff acted with deliberate indifference to his serious medical needs.

In his second claim, plaintiff alleges that officers used excessive force responding to his medical emergency. Instead of administering medical attention, plaintiff was cuffed too tightly to maliciously cause him harm. Officers and medical staff accused plaintiff of being "high" and then strapped him to a stretcher to take him to the medical unit. Plaintiff accuses Officer Bradburn of using excessive force by punching him several times in his chest and rib area. When plaintiff woke up from his seizure, he was still cuffed, shackled, and strapped, and he was suspended on a 45-degree angle from a different stretcher. Plaintiff "begged and pleaded for Officers Scott and Newman to loosen the arm and leg cuffs because they were cutting off the circulation and he could not feel his limbs. Both officers responded that they "couldn't do nuffin for me, it's not their call." Lt. Hamilton told the officers to "leave him like that for a while, then take him to the SHU." Plaintiff asked Lt. Hamilton why he was being taken to SHU who then struck plaintiff in the right eye as he lay defenseless on the stretcher. Hamilton stated, "[t]hat's for fucking spitting up on my officers." Plaintiff had a a blood clot in his right eye for weeks.

After Lt. Hamilton left, Nurse Bowman arrived and refused to give plaintiff medical attention, accusing him of being high. Plaintiff remained handcuffed as he lay on the stretcher.

2

Bowman roughly yanked his arm taunting and torturing him as she took his vitals. Plaintiff screamed and made faces as Officers Scott and Newman watched without intervening to stop Lt. Hamilton or Nurse Bowman from violating his rights.

One month later on December 19, 2021, at about 5:30 p.m., plaintiff alleges that he entered the cafeteria for dinner with Inmate David Thomas. He saw Lt. Hamilton standing at the end of the line food line. Lt. Hamilton stared at plaintiff and mumbled something as he walked past. Lt. Hamilton left the cafeteria, returned with Officer Dickenson and told him to get plaintiff "on the way out" and take him to Hamilton's office. As plaintiff and Thomas exited the chow hall to clear the metal detector, Officer Dickenson gave plaintiff an order to "step out the line and follow him." Plaintiff asked where he was being taken and what did he do wrong. Dickenson responded "you know what you did, Lt. Hamilton just wants to have a talk with you." Plaintiff complied without incident and he was escorted to the office and placed in a holding cell.

While waiting for Lt. Hamilton, several officers entered the office and made threatening comments such as "you fucked up bad, boy" and "if I got a problem with one of them, then I have a problem with all of them". Lt. Hamilton then entered the office with several unknown staff and went into the lounge area. Officer Kelly instructed Plaintiff to leave his shoes off and follow him into the lounge. Plaintiff asked what he had done, and Lt. Hamilton responded, "why the fuck do I have his name in my paperwork?" Hamilton was referring to a grievance filed by plaintiff. Lt. Hamilton stated that if plaintiff "didn't drop his name out my claim, he was going to smoke my black ass and have me taken to the SHU." Plaintiff agreed to drop his claim fearing for his safety and security because he knew Hamilton would act on his threats. Hamilton told plaintiff to "get the fuck out" and go back to his unit, but to remember what he had said.

The next day, plaintiff filed a "Sensitive BP-9" and gave it to Warden Streeval for his review. Plaintiff told the warden to review CCTV footage to corroborate his claim. Warden Streeval responded via email that his BP-8 and BP-9 allegations were "being looked at".

Finally, plaintiff claims false imprisonment/wrongful confinement based on the November 17, 2021, incident. Plaintiff states that Officer White, as authorized by Lt. Hamilton, filed an incident report for 112-use of drugs/alcohol. Plaintiff did not receive a urine screen, blood test, or breathalyzer to support these false allegations. Officer White stated in his incident report that when he arrived at his cell after the duress button was pushed, plaintiff was on his back seizing and vomiting. Lt. Vinzant served the incident report on Plaintiff on November 18. At his disciplinary hearing, Hearing Officer Sizemore dismissed the incident report because of Officer White's comment and no blood test or breathalyzer corroborated the use of drugs/alcohol.

Plaintiff seeks five million dollars in damages in addition to reimbursement for his medical expenses and legal fees.

## II. Claims and Defenses

Martin asserts claims for (1) deliberate indifference to a serious medical need in violation of the Eighth and Fourteenth Amendments, (2) excessive force amounting to cruel and unusual punishment in violation of the Eighth Amendment; (3) retaliation in violation of his First Amendment rights; and (4) false imprisonment in violation of his Fourteenth Amendment procedural due process rights.

The defendants have moved to dismiss Martin's claims under Fed. R. Civ. P. 12(b)(6) on the grounds that none of his claims are cognizable under *Bivens* and some do not state constitutional violations. Alternatively, they move for summary judgment on the grounds of

failure to exhaust and qualified immunity. Finally, Plaintiff seeks to amend the complaint to provide further facts in support of his claims.

## I. Discussion

### A. Motion to Amend

Plaintiff filed a motion to amend to "submit evidence which corroborates the facts and allegations of my complaint." Plaintiff has attached 31 pages of exhibits to this motion. Dkt. Nos. 55, 55-1. Plaintiff's motion is denied as an improper attempt to amend his complaint in piecemeal fashion. *See* Fed. R. Civ. P. 8, 10.

### B. 12(b)(6) Motion to Dismiss

When analyzing a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the court must view all well-pleaded allegations in the light most favorable to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A plaintiff must "plausibly suggest an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

In addition, *pro se* plaintiffs are held to a "less stringent standard" than lawyers, and courts construe their pleadings liberally, no matter how "inartfully pleaded." *Erickson v. Pardus*,

5

551 U.S. 89, 94 (2007). Nonetheless, a *pro se* complaint must still meet the "minimum threshold of plausibility" under *Twombly* and *Iqbal*. *See Manigault v. Capital One, N.A.*, CIVIL NO. JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). While *pro se* complaints "represent the work of an untutored hand requiring special judicial solicitude," district courts are not required to "conjure up questions never squarely presented to them" or to "construct full blown claims from . . . fragments." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1277–78 (4th Cir. 1985).

C. **Application of *Bivens***

In 42 U.S.C. § 1983, Congress has provided a remedy against *state* employees for violation of a plaintiff's federal constitutional rights. Congress has not provided any such remedy against federal employees. *Annappareddy v. Pascale*, 996 F.3d 120, 132–33 (4th Cir. 2021). The Supreme Court in 1971 recognized an implied right to damages from individual federal employees, acting under color of federal law, for violation of the Fourth Amendment in *Bivens*. More recently, the Court has strictly limited the scope of permissible claims under *Bivens*, articulating a two-step process for determining whether *Bivens* applies. First, courts must decide whether a claim differs in any meaningful way from the only three Supreme Court cases[1] that have permitted a cause of action against federal employees for violation of constitutional rights. *Ziglar v. Abbasi*, 582 U.S. 120, 139 (2017). If the claim does not fall "precisely under *Bivens, Davis*, or *Carlson*," the court must consider whether other factors warrant hesitation in extending a *Bivens* remedy. *Id.* at 136. The Court has stated that a "claim may arise in a new context even if it is based on the same constitutional provision as a claim in a

---

[1] *Bivens*, 403 U.S. at 389 (allowing suit under the Fourth Amendment against agents of the Federal Bureau of Narcotics, in their individual capacities, for placing a man in shackles in front of his family, searching his apartment without a warrant, threatening to arrest his whole family, and arresting him with neither a warrant nor probable cause); *Davis v. Passman*, 442 U.S. 228, 230 (1979) (allowing suit against a Congressman for gender discrimination in violation of the equal protection component of the Fifth Amendment's Due Process Clause); and *Carlson v. Green*, 446 U.S. 14, 18 (1980) (permitting an Eighth Amendment suit against prison officials for deliberate indifference in failing to treat an inmate's asthma, resulting in his death).

case in which a damages remedy was previously recognized." *Hernandez v. Mesa*, 589 U.S. 93, 103 (2020). Courts are "clearly warned to act with the utmost hesitation when faced with actions that do not fall precisely under *Bivens*, *Davis*, or *Carlson*." *Tate v. Harmon*, 54 F.4th 839, 845 (4th Cir. 2022); *see also Abbasi*, 582 U.S. at 147 (cautioning that "a modest extension is still an extension").

Plaintiff's claim for deliberate indifference to his serious medical needs arises in a new context. This claim is not at all like the claims recognized in *Bivens* or *Davis*. It bears some resemblance to the Eighth Amendment claim in *Carlson*, but the differences are also striking. Plaintiff has alleged that he was denied appropriate medical care because the staff at USP-Lee thought he was under the influence of some type of substance. *Carlson*, by contrast, involved a medical emergency that led to the plaintiff's death. Unlike the plaintiff in *Carlson*, Martin does not allege a history of a serious medical condition for which he was denied medical care.

Plaintiff's excessive force claim also arises in a new context. The only similarity to *Bivens*, *Davis*, or *Carlson* is that *Carlson* also was an Eighth Amendment claim, but this is where the similarities end. Courts have held that Eighth Amendment excessive force claims arise in a new context for purposes of *Bivens*. *See, e.g.*, *Silva v. United States*, 45 F.4th 1134, 1137 (10th Cir. 2022) (finding that the differences between *Carlson* and a prison excessive force claim "would require an expansion of *Bivens*"); *Jean v. Smallwood*, Case No. 7:20-cv-00415, 2022 WL 17969091, at *5 (W.D. Va. Dec. 27, 2022) ("None of the cases—*Bivens*, *Davis*, or *Carlson*— involved Eighth Amendment claims alleging an improper use of force by BOP officers (or related bystander liability claims).").

Plaintiff's First Amendment claim also presents a new context. None of the cases— *Bivens*, *Davis*, or *Carlson*—involved a First Amendment retaliation claim. *See Egbert v. Boule*,

7

596 U.S. 482, 499 (2022) (finding that a First Amendment retaliation claim arises in a new context and declining to extend *Bivens* to that context).

Finally, plaintiff's due process claim, which relates to his allegation that he was wrongfully confined to SHU based on false allegations, arises in a new context. Neither *Bivens* nor *Carlson* involved due process rights. *Davis* involved Fifth Amendment due process rights, but that case involved gender discrimination against a staff member of Congress, which is far afield from a due process violation in prison disciplinary proceedings.

In sum, because all of plaintiff's claims arise in a new context, the court must consider the following special factors analysis.

## D. *Bivens* Special Factors

Having determined that plaintiff's claims present new contexts, the next inquiry for the court is "whether there are any special factors that counsel hesitation about granting the extension of *Bivens*." *Tate*, 54 F.4th at 844 (citing *Hernandez*, 589 U.S. at 102). The Supreme Court has directed that the "special factors" inquiry must center on "separation-of-powers principles" and "requires that a court ask whether judicial intrusion into a given field is appropriate." *Bulger v. Hurwitz*, 62 F.4th 127, 137 (4th Cir. 2023) (citing *Hernandez*, 589 U.S. at 94 and *Ziglar*, 582 U.S. at 135). While the Supreme Court has not provided a comprehensive list of special factors, lower courts are instructed to "consider the risk of interfering with the authority of other branches" and to determine "whether there are sound reasons to think Congress might doubt the efficacy or necessity of a damages remedy," as well as "whether the Judiciary is well suited, absent congressional action, or instruction to consider and weigh the costs and benefits of allowing a damages action to proceed." *Tate*, 54 F.4th at 845 (citing *Hernandez*, 589 U.S. at 102). If there is "reason to pause before applying *Bivens* in a new

context or to a new class of defendants," the request to extend *Bivens* should be rejected. *Hernandez*, 589 U.S. at 102.

Courts must also look at whether there is an alternative remedial structure available in a case. *Ziglar*, 582 U.S. at 122.  The Supreme Court has instructed that "a court may not fashion a *Bivens* remedy if Congress has already provided, or has authorized the Executive to provide, an 'alternative remedial structure.'" *Egbert*, 596 U.S. at 93.  When such a structure is in place, that fact alone, "like any special factor, is reason enough to limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.*  Furthermore, it is of no consequence that the "existing remedies do not provide complete relief." *Id.*

The court begins with the observation that plaintiff's claims implicate the field of prison administration, a matter that is "rarely" the proper subject for "judicial intervention." *Egbert*, 596 U.S. at 494.  "[C]ourts have long been committed to avoiding judicial intervention in the running of prisons or in matters of security within prisons." *Jean*, 2022 WL 17969091, at *5.  For example, part of this case involves plaintiff's allegations about the use of restraints as a disciplinary measure.  "If the court were to create a judicial remedy here, it would be interjecting the judiciary into decisions about when and under what circumstances restraints may be used.  It also would be creating potential liability for assaults by BOP officers, especially as related to the use of restraints.  These are issues that could have far-reaching consequences to the daily operation of BOP facilities." *Id.*  Courts have rejected extending *Bivens* to claims akin to plaintiff's other claims for similar reasons.  "Given the ease with which an inmate could manufacture a claim of retaliatory detention, allowing a *Bivens* action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to the correctional experts." *Earle v. Shreves*, 990 F.3d 774, 781 (4th Cir. 2021); *see also Landis v. Moyer*, 610 F. Supp. 3d

649, 660 (M.D. Pa. 2022) ("Adjudicating prisoner excessive-force claims would also entangle the federal judiciary in byzantine issues of prison administration and institutional security and would impact BOP operations systemwide.").

Another special factor that counsels against extending *Bivens* is the refusal of Congress to create such a remedy against federal officials, despite extensive legislation in matters of prison litigation, including the Prison Litigation Reform Act (PLRA). In enacting the PLRA fifteen years after *Carlson*, Congress had "specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs," but the Act "does not provide for a standalone damages remedy against federal jailers," which suggests that "Congress chose not to extend the *Carlson* damages remedy to cases involving other types of prisoner mistreatment." *Abbasi*, 582 U.S at 149. "Because Congress has expressed a desire to prevent courts from interfering with BOP decisions and has been conspicuously silent about creating a remedy for prisoners to obtain damages from individual officers, the existence of the [BOP's Administrative Remedy Program (ARP)] and PLRA counsel hesitation in extending *Bivens*." *Bulger*, 62 F.4th at 141.

Also dispositive is that plaintiff has alternative remedies to a *Bivens* claim, such as the BOP's ARP, the Federal Tort Claims Act, suits in federal court for injunctive relief, habeas relief, and complaints through the Inspector General Act of 1978. Like "all federal inmates," Martin has "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program." *Earle*, 990 F.3d at 780. The court acknowledges that the Fourth Circuit recently extended *Bivens* to a case involving excessive force in violation of the Eighth Amendment. *Fields v. Fed. Bureau of Prisons*, 109 F.4th 264 (4th Cir. 2024). In *Fields*, however, the court reasoned that the plaintiff

10

"lacked access to alternative remedies because prison officials *deliberately* thwarted his access to them." *Id.* at 274 (emphasis in original). Plaintiff has made no such allegation in this case. The court in *Fields* acknowledged that "the ARP is not the problem. The system put in place by the executive has the capacity to provide relief to Fields. Instead, the problem was the intentional improper conduct of the individual officers, which deprived Fields of access to the ARP." *Id.*

In sum, the court finds that special factors weigh against extending *Bivens* to plaintiff's claims in this case, which will be dismissed.

### III. CONCLUSION

For the reasons stated, I deny plaintiff's Motion to Amend, grant the defendants' Motion to Dismiss and dismiss Martin's complaint. Because this fully disposes of the case, there is no need to address the defendants' Motion for Summary Judgment, which is dismissed as moot.

Enter: February 13, 2025

/s/ Robert S. Ballou

Robert S. Ballou
United States District Judge

11